DAVID L. SKINNER & CO., Inc., et al. v.
HITCHCOCK et al.

No. 2832.

Circuit Court of Appeals, First Circuit.

Sept. 15, 1933.

MORTON, Circuit Judge, dissenting.

C. Harold Baldwin and Spaulding, Baldwin & Shaw, all of Boston, Mass., for appellants.

William Harold Hitchcock, of Boston, Mass., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This case originally came before this court on a petition for leave to appeal. While no transcript of the record in the District Court was filed with the petition, the facts on which the alleged erroneous ruling of the District Court was made are simple, and at the time of the hearing on the petition for leave to appeal were orally stated to this court by the parties. The petition for appeal was allowed and opportunity given the petitioner to file a transcript of the record in the District Court, and ten days given to each party in which to file briefs after the filing of the transcript with the clerk of this court.

This has been done. No new facts other than those agreed upon by the parties at the time of the hearing on the petition, or any new authorities cited in the briefs filed within the ten-day period in addition to those cited in the brief filed by the receivers in opposition to the granting of the petition, appear.

It now appears from the record that the only issues of fact raised by the answers to the petition in bankruptcy are: Whether an act of bankruptcy was committed by the appointment of a receiver in the state courts for the Nantasket Steamboat Company because of its insolvency; whether it was insolvent on the date of the filing of the petition in bankruptcy; and whether two of the three petitioning creditors participated in the state receivership proceedings to the extent of estopping them from joining in such petition.

Of course, no facts bearing on these issues are found in the record. Neither do any grounds appear therein on which the motion for postponement of the hearing was based.

The single issue of law raised by the assignment of errors is whether an order of the District Court continuing the hearing on the issues raised on the petition in bankruptcy and answers thereto filed June 12, 1933, until after September 15, 1933, without fixing any definite date for such hearing, is in compliance with section 18d of the Bankruptcy Act (11 USCA § 41 (d), which requires the issue thus raised to be determined "as soon as may be."

The order of the District Court, which is the basis of the appeal, issued on motion of the appellees that the hearing on the issues thus raised "be continued until on or about September 15, 1933," and against the protest of the appellants, is as follows:

"Upon the foregoing motion, after hearing William Harold Hitchcock, petitioner, and C. Harold Baldwin of counsel for the petitioning creditors,

"It is ordered that hearing be continued until after September 15, 1933."

It may be that, by the time this opinion is filed, the question raised by the assignment of errors will have become of little concern to the parties to the cause, but an interpretation of section 18d of the act is essential for the future guidance of both court and counsel.

It is undoubtedly true that some discretion is permitted the District Court under section 18d of the act in fixing the time of hearing on the issues raised by a petition in bankruptcy and answer thereto, yet it is perfectly clear that Congress intended by the provisions of the act to have the issue of bankruptcy determined at an early date. The reasons therefor are so plain as not even to require a statement thereof.

While this court cannot control a proper exercise of judicial discretion by the District Court in such cases, it is of the opinion that the postponement of such hearing to an indefinite date more than three months after the filing of an answer is a clear abuse of the discretion vested in the District Court under the section above referred to. Adams v. Foster, 5 Cush. (Mass.) 156; Bentley v. Ward, 116 Mass. 333; Silverstein v. Daniel Russell Boiler Works, Inc., 254 Mass. 137, 140, 149 N. E. 705.

To approve of such an order would, in effect, defeat the obvious purpose of section 18d of the act.

The order of the District Court is reversed, and the case is remanded to that court for

further proceedings not inconsistent with this opinion.

MORTON, Circuit Judge (dissenting).

I regret that I am unable to assent to the views of my brethren on this case.

The question is whether the District Judge abused his discretionary powers in postponing on the motion of the respondent, the hearings in an involuntary bankruptcy case for a period of about three months. No harm appears to have been done by the postponement; and it seems to me a rather trivial matter on which to have allowed an appeal. In the first place, I do not think that the record adequately presents the matter so that the question can be considered. It contains nothing but a short stipulation which amounts only to a summary of the pleadings, the motion on behalf of the respondent to postpone hearings on the question of adjudication until after September 15, the counter motion by the petitioners to proceed with the hearings as soon as may be, and the orders granting the first motion and denying the second one. There is not a syllable as to the facts on which the motion rested, and no report of the proceedings before the District Judge, nor any statement or opinion by him showing the facts on which he acted. It does not seem to me that an appeal involving, in one aspect at least, a question of fact can be heard on such a record; nor am I aware of any precedent justifying such action. It is true that, at the hearing on the application for leave to appeal, counsel for the respondent agreed to certain oral statements of fact bearing on the merits of the appeal, which had been made by the opposing counsel, or put to him by members of the court. But this talk was not taken down and is not in the record. The determination of what was said rests on no basis but the individual recollection, not in written form, of the participants in the talk and of the bystanders who heard it. Surely this is not a safe basis on which to put an appellate decision.

From my own recollection of what was said—I have no means of knowing accurately how far it accords with that of my brethren, because the majority opinion contains no statement of the facts assumed by them to have been before the District Judge—I understand that the situation presented to him was about as follows: Across the harbor from the city of Boston lie the towns of Hull and Nantasket Beach. Their location with reference to the city resembles roughly the points of an inverted C. From either place to Boston it is a long way around by land through Hingham, and a comparatively short distance across by water. Hull is an old summer settlement; Nantasket Beach is a popular resort.

For over fifty years the respondent steamboat company has furnished during the summer months water transportation to these places. Its daily average number of passengers, while being operated by the receivers during the first part of the present summer, was about three thousand; and it was expected that this figure would be largely increased during July and August. Many persons apparently find it pleasanter or more convenient to use the boats between Hull or Nantasket and Boston. The respondent is clearly furnishing transportation service as a common carrier which is of advantage to a substantial portion of the public.

Some time during the spring of 1933—the exact date does not appear—the state court appointed receivers for the steamboat company and authorized them to continue its operations. It is alleged in the answer that the present petitioners joined in that proceeding; and it is said that they became disgruntled because the court did not accept their suggestions as to the persons who should be appointed receivers, and thereupon filed the present petition. Ninety-four per cent. in amount of the creditors are with the receivers. The receivers proceeded to put the steamers into commission and get ready for the summer business, which involved considerable expense; and, when the usual time arrived, they began to operate the boats. At the date of the hearing of this appeal, the receivers expressed the opinion that the results of their operations to date were such as to afford hope that the line might profitably be continued. If this should prove to be the fact, it would largely affect the value of the company's wharf and terminal property. At the time when the motion to postpone hearings was presented, the receivers felt that it would be impracticable to undertake summer operations if within that period they might be stopped by an adjudication in bankruptcy; in other words, they felt it inadvisable to undertake summer operations without a reasonable assurance that they would be allowed to continue for the full season. They apparently felt also, and urged, that the result of the summer's business would throw much light on the real value of the company's property and be a great assistance in determining whether the company was insolvent. No reasons for haste were shown, or are urged before us.

The petitioners are not in fact injured by the delay. Every dictate of sound business judgment and common sense was in favor of the postponement requested. There is no room, as it seems to me, for doubt on this point; nor does the majority opinion intimate otherwise.

The majority opinion, as I understand it, rests upon the view that the terms of the statute prevented the District Judge from exercising his common sense. The Bankruptcy Act says: "If the bankrupt, or any of his creditors, shall * * * controvert the facts alleged in the petition, the judge shall determine, as soon as may be, the issues presented by the pleadings, * * * and make the adjudication or dismiss the petition." Section 18d (11 USCA § 41 (d). I do not think that these words have the extreme meaning which my brethren attribute to them. Taken literally, the expression "as soon as may be" is meaningless. It is a common colloquialism in which the significant word is intentionally elided for the sake of indefiniteness. There are many definite expressions of this character in common use; e. g. "as soon as possible," "as soon as reasonable," "forthwith," "without delay," etc. If Congress had meant them, it would have used them—or one of them. The indefiniteness of the expression adopted seems to me to have been intentional, in order not to circumscribe too closely the judge's usual sphere of discretionary action in matters of continuance or postponement, but to leave him free to exercise sound judgment upon them. We are not dealing with a statute limiting the time within which papers must be filed or action taken by a party, which stand on quite a different footing. The Bankruptcy Act is essentially a commercial statute. It should be given a reasonable interpretation in aid of its intended purposes and not impaired by an exaggerated—and in this case I believe a mistaken—literalness. I fully agree that the language of the statute must be enforced. But, where the language of a statute is uncertain and indefinite, the courts in interpreting it ought to consider the practical consequences of the different interpretations of which the language used is susceptible. This I understand to be the view of the Supreme Court about the Bankruptcy Act. American Surety Company v. Marotta, 287 U. S. 513, 53 S. Ct. 260, 77 L. Ed. 466, U. S. Supreme Court opinion January 9, 1933.

If it be the intention of the majority opinion to hold that under no conceivable state of facts can a postponement of hearing for three months on an involuntary bankruptcy petition be other than an abuse of discretion and a violation of the act, then the facts in this case show that such a rule is highly unfortunate; and for the reasons above suggested it seems to me to be wrong in law.